ELIZABETH HETLAND v. BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 521, ADA.

207 N. W. 2d 731.

February 16, 1973—No. 43334.

*Clinton J. Hall* and *David L. Graven,* for appellant.

*Peterson & Popovich, Peter S. Popovich, Ivars J. Krafts,* and *James E. Knutson,* for respondent.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Schultz, JJ. Reconsidered en banc.

TODD, JUSTICE.

Plaintiff appeals from summary judgment dismissing her claim for salary increases denied her by the defendant school board for the school years of 1968-1969, 1969-1970, and 1970-1971. Plaintiff claims the "meet and confer" legislation of 1967 entitles her to recover because for each year in question the defendant school board reached an agreement with the bargaining unit of the teachers for the salary increases, although she was singled out to receive no raise. We reverse.

The facts of this case are not in dispute. Plaintiff has been employed as a teacher for the defendant school district since 1941. She last entered into a teaching contract on April 21, 1952. The contract provided in part that it "shall remain in full force and effect, except as modified by mutual consent of the school board and the teacher * * *." The salary amount has been changed by a rider to the contract on a year-to-year basis, the last one being signed by plaintiff and defendant on March 20, 1968. In March 1968, plaintiff was advised that she would not be given a raise for the coming year based on objections of the school board contained in the notice. Plaintiff nevertheless did sign a contract rider for the agreed salary of $7,800, which was the same amount she received for the 1967-1968 school year. She executed no subsequent riders in 1969 or 1970 for subsequent school years. She continued to receive the salary of $7,800 per year through the school year 1970-1971, while other teachers in her same classification have been granted salary increases.

Plaintiff was a member of the Ada Educational Association, a teachers' organization which negotiated with and reached an agreement with defendant school board on the salary schedules for the years 1968-1969, 1969-1970, and 1970-1971. These agreements were ratified by resolution of the school board and applied to all teachers except plaintiff.

Plaintiff contends that the action of the defendant violates

the so called "meet and confer" law enacted in 1967, Minn. St. 1969, §§ 125.19 to 125.26;[1] that the denial of a raise to her is an illegal demotion; and that the denial of such raise violates her constitutional rights.

 Plaintiff concedes in her arguments, and we hold, that absent the adoption of Minn. St. 1969, § 125.23 (L. 1967, c. 633, § 5, effective May 23, 1967), she would not be entitled to recover. Our decisions in Sutton v. Board of Education of City of Duluth, 197 Minn. 125, 266 N. W. 447 (1936), and Frisk v. Board of Education of City of Duluth, 246 Minn. 366, 75 N. W. 2d 504 (1956), clearly establish the right of the school board to adopt a schedule of salaries and yet deal with each individual teacher on a separate contractual basis. See, also, Morey v. Independent School Dist. No. 492, 312 F. Supp. 1257 (D. Minn. 1969), affirmed per curiam, 429 F. 2d 428 (8 Cir. 1970), where a Federal court found a decision by a state district court holding that the principles outlined in Sutton and Frisk were the applicable law in the State of Minnesota was res judicata in a suit to obtain increases provided in a salary schedule. The Frisk and Sutton cases remain good law in the State of Minnesota; however, they must be reexamined in the light of the adoption by our legislature of the meet and confer law, effective May 23, 1967.

Minn. St. 1969, § 125.23, provided as follows:

"The school board or a committee thereof which may include its representative shall meet and confer at reasonable times with the recognized teacher organization or teacher's council which may include their representative regarding conditions of professional service, as well as educational and professional policies, relationships, grievance procedures, and other matters as apply to teachers. With respect to conditions of professional service the parties shall meet and confer in an effort to reach agreement. With respect to all other matters, the parties shall meet and con-

---

[1] These sections govern this case although they were repealed by Ex. Sess. L. 1971, c. 33, § 17.

fer in order to afford a reasonable opportunity for the expression of views and the exchange of information. When agreement is reached concerning conditions of professional services the board shall implement the agreement in the form of a resolution or by direction to any administrative officer as may be appropriate."

It should be noted that this section compelled the school board to meet with the representatives of the teachers and to confer with them. It did not require that an agreement be reached but only that an effort be made to reach an agreement. If no agreement was reached, no change occurred in the applicable law and the doctrine of Sutton and Frisk remains applicable. Therefore, in the absence of agreement, any schedule adopted by the school board was merely advisory and the school board was free to negotiate with individual teachers regarding their respective salaries.

■ However, if an agreement was reached with the teachers' representative, a different situation must necessarily follow. It is fairly obvious that the legislature intended some change in the existing law. The only reasonable change that can be inferred from the language of the statute is that an agreement, if adopted, was binding on the school board and the teachers' organization and all teachers represented thereby. Plaintiff must be included in that classification. To hold otherwise would render the adoption of the statute meaningless. It would be an exercise in futility for the school board to meet and confer, reach an agreement, formally proclaim it and announce it, and execute it by contract or resolution, and then to immediately abrogate all of its terms and conditions by successfully negotiating individual contracts with the various teachers.

■ Defendant school board, upon reaching an agreement with the teachers' representative, adopted a salary schedule for each school year in question. As part of the salary schedule, the following items were included:

"7. The Board of Education reserves the right to refuse any teacher the annual increment for unsatisfactory work.

"8. This schedule is not a part of the teachers contract and may be changed by the Board of Education whenever it deems it necessary; provided that all teachers are given notice before April 1st, preceding the school year in which the schedule would take effect."

Defendant argues that paragraph 7 thereof reserves to the school board the right to change individual teacher's salaries and therefore restricts the agreement reached with the representatives of the teachers' organization. The reservation in paragraph 7 goes to annual increments and not to annual salaries. The increments are generally defined as in-step increases, increases for additional education, and other special items exclusive of annual salary. Defendant also argues that paragraph 8 allows the school board to change the schedule as to individual teachers. The reservation in paragraph 8 allows a change of the whole schedule and reserves to the school board the right to renegotiate the schedule in future contract negotiations, but it does not permit the negotiation of individual teacher contracts after a schedule has been adopted. The interpretation advocated by the defendant is perverse to the clear and explicit language of the paragraphs in question.

■ Defendant contends that in interpreting § 125.23, it is necessary to consider the provisions of Minn. St. 125.12, subd. 4, which provide that upon completion of a probationary period a teacher has a continuing contract with the school district. Section 125.12, subd. 4, provides in part:

"* * * Thereafter, the teacher's contract shall remain in full force and effect, *except as modified by mutual consent of the board and the teacher,* until terminated by a majority roll call vote of the full membership of the board, upon one of the grounds specified in subdivision 6, or by the written resignation of the teacher, before April 1, or until the teacher is discharged pursuant to subdivision 8." (Italics supplied.)

Defendant argues that if plaintiff's position is accepted, it would relieve the necessity of individual contracts; it would be a clear violation of the intent of the legislature; and it would destroy the mutual consent provisions of this statute. However, the meet and confer law allowed and encouraged teachers to form or join an organization (Minn. St. 1969, § 125.21) to meet with the school board in an effort to reach agreement on the economic aspects of employment (§§ 125.23, 125.20, subd. 5). When the school board and the organization did meet and reach an agreement on salaries, that agreement had the effect of modifying the individual teachers' contracts in the area of salaries with the mutual consent of the school board and the teachers who were members of the organization. Such a result is fully compatible with § 125.12, subd. 4.

■ Therefore, we hold that while defendant school board had no obligation to reach an agreement with the representative of the teachers' organization to which plaintiff belonged, having done so, it was bound by the terms of its agreement and could not deal with teachers on an individual basis as far as salary matters are concerned. Schedules bargained for by the school board and the representatives are binding on both parties, and the school board may not refuse to pay an individual teacher the salary increases bargained for by her representative. Since neither the school board nor the teacher had a right to individually bargain under the circumstances of this case, the rider executed by the parties on March 20, 1968, is a nullity and not enforceable by either party on an individual basis. Plaintiff is entitled to recover from defendant the difference between the salary she actually received for the school years in question and the salary bargained for her by her representative for the classification in which she was entitled to teach, together with interest on such unpaid amounts to the date of payment.

Having disposed of this matter on the first issue raised by the plaintiff, we need not consider the other issues she raises.

The summary judgment in favor of defendant is vacated and

the matter remanded to the trial court for proceedings in accordance with this opinion.

Reversed and remanded.