**Winifred D. MORIO, Regional Director of Region 2 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**The NORTH AMERICAN SOCCER LEAGUE and its Constituent Member Clubs, Respondents.**

**No. 80 Civ. 4332.**

United States District Court,
S. D. New York.

Aug. 18, 1980.

Timothy J. English, Pearl Zuchlewski, David E. Leach, III, Attys., N.L.R.B., New York City, for petitioner.

Danzansky Dickey, Quint & Gordon by Thomas J. Walsh, Robert Rolnick, Lionel Pashkoff, Washington, D. C., Cohn Glickstein, Lurie, Ostrin & Lubell by Stephen L. Fine, New York City, for respondents.

Vladeck, Elias, Vladeck & Engelhard, P. C., by Sheldon Engelhard, New York City, Richard A. Berthelsen, Washington, D.C., for North American Soccer League Players Association.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

This is an action brought by Petitioner, the Regional Director, Region 2, National Labor Relations Board, for and on behalf of the National Labor Relations Board (the Board) in which she seeks a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended (the Act), pending the final disposition of

matters presently pending before the Board.[1] Respondents in this action are the North American Soccer League and its 21 constituent member clubs in the United States. The action is now before the court upon the issuance of an order to show cause why the temporary injunctive relief prayed for by Petitioner should not be granted. Petitioner filed her order to show cause for a temporary injunction, verified complaint, affidavits and brief in support of her application on July 30, 1980. Respondents' answer was served on August 5, 1980. A hearing was held on August 6 and 7, 1978. The North American Soccer League Players Association (the Union) was permitted to intervene in the action and to participate in the hearing. All parties were given an opportunity on the hearing to present evidence and to argue the legal issues. Thereafter, Petitioner and Respondents were given an opportunity to submit proposed findings of fact, conclusions of law, and briefs. The court has now considered the verified petition of Winifred D. Morio, Regional Director of Region 2 of the National Labor Relations Board, the answer of Respondents, the evidence adduced at the hearing, the arguments of the parties and intervenor and the proposed findings of fact and conclusions of law and briefs. Upon the entire record, the court finds and concludes that Petitioner has reasonable cause to believe and there is reasonable cause to believe that Respondents have engaged in unfair labor practices and that Petitioner is entitled to the temporary injunctive relief sought in this action.

On August 16, 1977, the Union filed a petition for an election under Section 9(c) of the Act alleging that the League and each of its affiliated members constituted a single employer for purposes of collective bargaining.[2] Hearings were held from September 8 to September 30, 1977, and briefs were submitted on the unique and complex issues of the appropriate unit in the professional soccer industry. On June 30, 1978, exactly nine months later, the Board issued a decision and direction of election among the soccer player employees of those teams listed in the petition as well as other employers who had been granted franchises by the League and commenced operations of teams during the intervening period.

On or about July 27, 1978, through August 4, 1978, the employees of Respondent Clubs participated in a secret ballot election conducted under the supervision of the Board, wherein a majority of the valid votes counted were cast for the Union. On September 1, 1978, the Union was certified as the exclusive collective bargaining representative of the employees of Respondent Clubs.

Subsequent to the certification, Respondents refused to bargain with the Union and contested the Board's determination of a single "League–wide unit" as being appropriate for collective bargaining. The Union filed an unfair labor practice charge on October 30, 1978 in Case No. 2–CA–15966. The General Counsel issued a complaint on November 24, 1978, against Respondents which alleged, *inter alia*, that Respondents had failed and refused to recognize and bargain with the Union in violation of Section 8(a)(1) and (5) of the Act.[3] Following a summary judgment proceeding, the Board, on April 30, 1979, issued an order directing Respondents to bargain with the Union (241 NLRB No. 199). The Respondents appealed the Board's order to the United States Court of Appeals for the Fifth Circuit.

On March 21, 1980, the United States Court of Appeals for the Fifth Circuit issued its decision enforcing the Board's Order (103 LRRM 2976) and on May 14, 1980, issued its mandate. The mandate contained language directing the Respondents to recognize and bargain with the Union as exclusive collective bargaining representative of Respondent's professional soccer players.

Respondents have filed a petition for a writ of certiorari in the United States Su-

1. 29 U.S.C. § 160(j).

2. 29 U.S.C. § 159(c).

3. 29 U.S.C. §§ 158(a)(1) & 158(a)(5).

preme Court. Their petition for rehearing has been denied by the Fifth Circuit and no stay of the Fifth Circuit's mandate has been secured.

On March 28, 1979, the Union, pursuant to provisions of the Act, filed with the Board a charge alleging that Respondents have engaged in and are engaging in unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act.[4] Other such unfair labor practice charges were filed by the Union on June 25, 1979, alleging violations of 8(a)(1), (3) and (5) of the Act.[5] These charges were referred to Petitioner for adjudication. Thereafter, on October 20, 1979, a complaint and notice of hearing pursuant to Section 10(b) of the Act, alleging that Respondents have engaged and are engaging in unfair labor practices within the meaning of the Act, was issued by the Regional Director.[6] On November 30, 1979, the Union filed more charges of unfair labor practices by Respondents which were again referred to the Regional Director and again on January 18, 1980, a complaint and notice of hearing with respect to these latest charges were issued by Petitioner. All charges by the Union were ordered consolidated for hearing by Petitioner on February 14, 1980. On February 19, 1980, Petitioner amended the consolidated complaint. Subsequently, hearings were held before Administrative Law Judge Benjamin Schlesinger. These hearings were held between March 4 and May 1, 1980, in four cities around the country. On May 28, 1980, the general counsel of the Board moved to amend the consolidated complaint. The hearing before the Administrative Law Judge has not been concluded. Petitioner seeks a temporary injunction pending the final disposition of the charges presently before the Administrative Law Judge and the final action of the Board with respect thereto.

Respondent, the North American Soccer League, is a non–profit association. It currently comprises about 24 professional soccer teams, 21 of which are located in the United States and three of which are located in Canada. The League's principal office is at 1133 Avenue of the Americas, County, City and State of New York, where it has been engaged in its operation as a non–profit association. Each of the constituent members is engaged primarily in the business of promoting and exhibiting professional soccer contests for viewing by the general public. Collectively, these clubs annually gross revenue in excess of half a million dollars and purchase and cause to be imported in interstate commerce goods and materials valued in excess of $50,000. The Respondent League and its constituent member clubs constitute and have constituted at all times material herein joint employers for the purpose of collective bargaining.

The Union is an unincorporated association and is an organization of employees which exists for the purpose, in whole or in part, of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of employment. The Union maintains its principal offices at 1300 Connecticut Avenue, N.W., Washington, D. C.

Philip Woosman is the Commissioner of the North American Soccer League. Ted Howard is Director of Operations of the League. Derek Carroll is Chairman of the Labor Relations Committee of the constituent member clubs and president of the New England Tea Men.

All professional soccer players, whether on loan or otherwise, employed by Respondent League and Respondent Clubs constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act.[7] This unit includes

4. Id.

5. 29 U.S.C. §§ 158(a)(1), 158(a)(3) & 158(a)(5).

6. 29 U.S.C. § 160(b).

7. The Board has found that the Respondent League and its constituent member clubs are

joint employers and that a collective bargaining unit comprised of all NASL players on clubs based in the United States is appropriate. 236 N.L.R.B. No. 181 (1978). This determination has been affirmed by the Fifth Circuit. 613 F.2d 1379 (5th Cir. 1980), *rehearing denied*, 616 F.2d 568 (5th Cir. 1980).

players on the following eligibility lists: active, temporarily inactive, disabled, suspended, ineligible, and military. The unit does not include officials of Respondent League or managerial or executive personnel of Respondent League and Respondent Clubs or players employed by the Edmonton Drillers, Toronto Metros and Vancouver Whitecaps. All other employees and supervisors as defined in the Act are also included. Since September 1, 1978, the Union, by virtue of Section 9(a) of the Act has been and is now the exclusive representative of all the employees in the unit for the purpose of collective bargaining with respect to the rates of pay, wages, hours of employment and other terms and conditions of employment.[8]

In this case Petitioner alleges that she has reasonable cause to believe that Respondent interfered with, restrained and coerced employees in the exercise of rights guaranteed them by Section 7 of the Act by engaging in the following acts and conduct:

1. On or about October 19, 1978, and continuing thereafter, Respondents unilaterally changed the employment conditions of the employees in the Unit by requiring them to obtain permission from their respective clubs whenever a particular brand of footwear, other than selected by each of Respondent Clubs, is desired by an employee.

2. On April 10, 1979, Respondent, acting through their agents, Phil Woosman and Ted Howard, unilaterally changed the employment conditions of the employees in the unit by initiating plans for a new winter indoor soccer season which began in November, 1979, and ended in March, 1980.

3. On or about November 24, 1979, and continuing to the present, Respondents, acting through their agents, Phil Woosman and Ted Howard, and other agents presently unknown, unilaterally changed and are continuing to change the employment conditions of the employees in the unit by requiring them to play or otherwise participate in the winter indoor soccer season.

4. On or about October 16, 1979, Respondents, acting through the same agents named above, unilaterally changed the employment conditions of employees in the unit by initiating plans to increase the 1980 regular summer outdoor soccer season schedule by two games and two weeks over the 1979 format and by subsequently implementing said plans and maintaining them in full force and effect.

5. On or about October 16, 1979, Respondents, acting through their said agents, unilaterally changed the employment conditions of employees in the unit by initiating plans to reduce the maximum roster of all the Respondent Clubs during the regular summer outdoor summer season from 30 to 26 players and by subsequently implementing said plan and maintaining them in full force and effect.

6. Commencing on or about October 19, 1978, until on or about March, 1979, and continuing thereafter, Respondents by–passed the Union and dealt directly with employees in the unit. Respondents solicited employees to enter into individual employment contracts, negotiated individual employment contracts, and actually entered into individual employment contracts with the employee members of the unit.

The evidence introduced at the hearing conducted by the court established that Petitioner has reasonable cause to believe that Respondents have entered into individual contracts with employees since September 1, 1978, and continue to do so and that these individual contracts constitute 96.8% of the existing individual contracts. The other 3.2% of the current individual player contracts were entered into prior to the Union's certification on September 1, 1978.

■ Respondents conceded that they have unilaterally changed the conditions of employment by requiring employees to obtain permission from their respective clubs before wearing a particular brand of footwear other than that selected by each Re-

8. 29 U.S.C. § 159(a).

spondent Club; that they have changed the conditions of employment by initiating plans for a new winter indoor soccer season which began in November, 1979, and ended in March, 1980; that they unilaterally changed conditions of employment by requiring employees to play or otherwise participate in the winter indoor soccer season; that they unilaterally changed conditions of employment by initiating plans to increase the 1980 summer outdoor soccer season by two games and two weeks over the 1979 format, which is presently in operation; and that they unilaterally changed employment conditions by initiating plans to reduce the maximum roster of all the Respondent Clubs during the regular summer outdoor season from 30 players to 26 players beginning on or about October 16, 1979, and continuing to the present.

Petitioner has therefore established that she has reasonable cause to believe that the Respondents have engaged in the foregoing unfair labor practices and is, therefore, entitled to temporary injunctive relief, pending the final determination of these charges presently pending before the Administrative Law Judge and the Board, as provided by Section 10(j) of the Act.

The court therefore finds and concludes that there is reasonable cause to believe Respondents have engaged in unfair labor practices in violation of the Act and that Petitioner is entitled to temporary injunctive relief as prayed for in the petition.

■ Respondents' first claim that some of the constituent clubs throughout the United States did not receive notice of the petition and order to show cause and therefore the court could not proceed to hear the petition as to them. The court finds that pursuant to the order of this court Petitioner personally served the Respondent League at its New York office and served Respondents' constituent member clubs by certified mail with a copy of the petition and order to show cause before 5:00 p. m. on July 31st. The court also finds that in addition counsel for Petitioner notified the

joint employers' attorneys for Petitioner's intention to seek injunctive relief should settlement efforts fail, as early as June 17, 1980. The court therefore concludes that Petitioner has satisfied Rule 4(d)(7) of the Federal Rules of Civil Procedure and that all Respondents received timely and sufficient notice of the application for a temporary injunction and the hearing. *Squillacote v. Food Workers,* 534 F.2d 735 (7th Cir. 1976); *Lee A Consaul Co.,* 192 NLRB 1130 (1971).

■ Respondents next claim that injunctive relief should be denied since the Board, itself, is responsible for delaying its own final determination of the charges of unfair labor practices which have been filed before it by the Union. This court finds that delay was caused in part by Respondents and that there has been no such delay by the Board as to warrant a denial of the requested injunctive relief.[9] The section pursuant to which Petitioner invokes this court's jurisdiction for temporary injunctive relief contemplates that there will be need for relief pending the final determination of matters pending before the Board, as the legislative history indicates. (S.Rep. No. 105, 80th Cong., 1st Sess. 8 (1947)). Section 10(j) of the Act provides that the Board shall have the power on the issuance of a complaint charging unfair labor practices to petition any district court of the United States, in any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief, or a restraining order. That section confers jurisdiction upon this court to grant the relief requested after notice and hearing.

■ The unilateral changes which Respondents admit have occurred since September 1, 1978, in the terms and conditions of employment, may violate the employer's obligations to bargain with the exclusive bargaining representative of the players. The duty to bargain carries with it the obligation on the part of the employer not

---

**9.** Respondents admit that they requested hearings in four cities around the United States. Both parties have requested additional time to submit briefs before the Board.

to undercut the Union by entering into individual contracts with the employees. In *NLRB v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), the Supreme Court noted: "A refusal to negotiate *in fact* as to any subject which is within § 8(d) and about which the Union seeks to negotiate violates § 8(a)(5)."

█ It is undisputed that Respondents have since September 1, 1978, refused to bargain with the Union. Respondents claim that they had a right to refuse to bargain with the Union since they were pursuing their right to appeal the Board's determination that all of the players referred to above constitute a unit for collective bargaining purposes. Respondents' duty to bargain with the Union arose from the time the Union was certified as the exclusive bargaining representative of the players–September 1, 1978. The fact that Respondents were pursuing their right to appeal did not, absent a stay of the Board's order, obviate their duty to bargain with the Union and does not constitute a defense to an application for relief under Section 10(j) of the Act where, as here, Respondents have apparently repeatedly refused to bargain with the Union and have continued to bypass the Union and deal directly with employees. *Lebus v. Manning, Maxwell & Moore, Inc.*, 218 F.Supp. 702 (W.D.La.1963). As Petitioner says, Respondents could have bargained subject to later court decision adverse to Petitioner and the Union and can do so now. Negotiations between Respondents and the Union were scheduled to commence August 12, 1980, notwithstanding Respondents' petition for a writ of certiorari.

█ Respondents' most vigorous opposition comes in response to Petitioner's application for an order requiring Respondents to render voidable, at the option of the Union, all individual player contracts, whether entered into before or after the Union's certification on September 1, 1978. Respondents' claim that such power in the hands of the Union, a non–party to this action, would result in chaos in the industry and subject Respondents to severe economic loss and hardship since these individual contracts are the only real property of Respondents.

It should be noted, at the outset, that the relief requested by Petitioner is not a request to have all individual contracts declared null and void. It should be emphasized that Petitioner is not requesting that the "exclusive rights" provision of the individual contracts, which bind the players to their respective teams for a certain time, be rendered voidable. Moreover, the Board seeks an order requiring Respondents to maintain the present terms and conditions in effect until Respondents negotiate with the Union–except, of course, for the unilateral changes–unless and until an agreement or a good faith impasse is reached through bargaining with the Union. Petitioner does not, however, seek to rescind that unilateral provision which provided for the *present* summer schedule. The Board has consciously limited its request for relief to prevent any unnecessary disruption of Respondents' business. The Board is seeking to render voidable only those unilateral acts taken by the Respondents, enumerated above, which Respondents admit have in fact occurred.

These unilateral changes appear to modify all existing individual contracts entered into before September 1, 1978, in derogation of the Union's right to act as the exclusive bargaining agent of all employees in the unit.

The court finds that Petitioner is entitled to the temporary injunctive relief which it seeks with respect to all of the individual contracts. The individual contracts entered into since September 1, 1978, are apparently in violation of the duty of the Respondents to bargain with the exclusive bargaining representative of the players. The Act requires Respondents to bargain collectively with the Union. The obligation is exclusive. This duty to bargain with the exclusive representative carries with it the negative duty not to bargain with individual employees. *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944); *NLRB v. Acme Air Appliance*

*Co.,* 117 F.2d 417 (2d Cir. 1941); *see* 29 U.S.C. § 159(a).

With respect to the individual contracts entered into prior to September 1, 1978, Petitioner is entitled to an injunction enjoining Respondents from giving effect to these individual contracts of employment or any modification, continuation, extension or renewal thereof "to forestall collective bargaining." *J. I. Case Co. v. NLRB*, 321 U.S. 332, 341, 64 S.Ct. 576, 582, 88 L.Ed. 762 (1944). The evidence adduced at the hearing disclosed that Respondents have refused to recognize that only the Union has the right to waive, if it so desires and to the extent it so desires, its right to be the exclusive bargaining representative. Respondents had also refused to negotiate with the Union since September 1, 1978, pending resolution of their appeal.

In *National Licorice Co. v. NLRB*, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940), the Supreme Court held that the Board has the authority, even in the absence of the employees as parties to the proceeding, to order an employer not to enforce individual contracts with its employees which were found to have been in violation of the NLRA. Petitioner is seeking temporary relief to this effect as to those individual contracts entered into before September 1, 1978, as well as relief with respect to those contracts entered into prior to September 1, 1978. The evidence discloses that Petitioner has reasonable cause to believe that Respondents have used, and will continue to use, the individual contracts entered into prior to September 1, 1978, to forestall collective bargaining.

With such contracts in place, Petitioner has reasonable cause to believe that Respondents' determination not to bargain with the Union has been well fortified and that there simply is no incentive for Respondents to bargain with the Union with those contracts in place. Petitioner has reasonable cause to believe that the ability of Respondents to enter into individual contracts and to continue to enforce them is to bypass and to undermine support for the Union. The court therefore finds that there is reasonable cause to believe that Respondents have used the individual contracts entered into prior to September 1, 1978, to forestall collective bargaining.

The Board is, therefore, entitled to the relief which it seeks requiring Respondents to render voidable certain provisions in the existing individual contracts which the Union requests, as set forth above. The Union has been permitted by the court to intervene in this action as a party petitioner. The court finds that it is not the intent of the Petitioner, as Respondents claim, to visit punitive actions on Respondents and that the requested relief with respect to the individual contracts has been carefully tailored to avoid chaos in Respondents' industry and to avoid any economic hardship to Respondents.

Finally, the court finds that under the circumstances of this case a temporary injunction would be just and proper.[10] In so holding, this court does not intend to pass on the merits of any pending unfair labor charges before the Board. Those are matters for determination by the Board. The court notes, however, that these charges are still pending before the Board and that Respondents are still pursuing all available remedies in the courts. It may therefore be a long time before final resolution of these matters. The court also notes that after the instant hearing was concluded, but before this court's decision, Respondents and the Union were scheduled to commence negotiations. However, those negotiations, if commenced, may take months to complete. In the interim, the purposes of the NLRA may be defeated and the public interests harmed.

---

**10.** *Douds v. International Longshoremen's Association,* 241 F.2d 278, 285 (2d Cir.).