JUSTICE ALLOY delivered the opinion of the court: At issue in the instant appeal is whether section 3 — 14.24 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 3 — 14.24) imposes upon school boards a duty to refrain from negotiating with individual teachers after the election and certification of an exclusive bargaining representative. Section 3 — 14.24 provides the following, as a duty of the regional superintendent of schools: “Recognition of exclusive bargaining representatives. To administer the recognition of exclusive representatives of bargaining units, making certain that each bargaining unit contains employees with an identifiable community of interest and that no unit includes both professional employees and nonprofessional employees unless a majority of employees in each group vote for inclusion in the unit. A public school employer may voluntarily recognize a labor organization for collective bargaining purposes if that organization appears to represent the greatest number of employees, and such recognition shall continue pending certification by the regional superintendent that the labor organization represents a majority of employees in the unit. A labor organization may also gain recognition as the exclusive representative by an election of the employees in the unit. Petitions requesting an election may be filed with the regional superintendent: A. by an employee or group of employees or any labor organization acting on their behalf alleging and presenting evidence that 30% or more of the employees in a bargaining unit wish to be represented for collective bargaining or that the labor organization which has been acting as the exclusive bargaining representative is no longer representative of a majority of the employees in the unit; or B. by an employer alleging that one or more labor organizations have presented a claim to be recognized as an exclusive bargaining representative of a majority of the employees in an appropriate unit or that it doubts the majority status of an exclusive bargaining representative. The regional superintendent shall investigate the petition and if he has reasonable cause to suspect that a question of representation exists, he shall give notice and conduct a hearing. If he finds upon the record of the hearing that a question of representation exists, he shall direct an election. Nothing prohibits the waiving of hearings by the parties and the conduct of consent elections. No election may be conducted in any bargaining unit during the term of a collective bargaining agreement covering such unit or subdivision thereof, except the regional superintendent may direct an election after the filing of a petition between January 15 and February 15 of the final year of a collective bargaining agreement. No election may be conducted in a bargaining unit, or subdivision thereof, in which a valid election has been held within the preceding 12 month period. Elections shall be by secret ballot. The regional superintendent may establish rules and regulations for the conduct of elections. Only labor organizations supported by 15% or more of the employees in the bargaining unit are eligible for placement on the ballot. The ballot must include, as one of the alternatives, the choice of ‘no representative.’ No mail ballots are permitted except where a specific individual would otherwise be unable to cast a ballot. The labor organization receiving a majority of the ballots cast shall be certified by the regional superintendent as the exclusive bargaining representative. If the choice of ‘no representative’ receives a majority, the employer shall not recognize any exclusive bargaining representative for at least 12 months. If none of the choices on the ballot receives a majority, a runoff shall be conducted between the 2 choices receiving the largest number of valid votes cast in the election. The regional superintendent shall certify the results of the election within 5 working days after the final tally of votes unless a charge is filed by a party that improper conduct occurred which affected the outcome of the election. The regional superintendent shall promptly investigate the allegations, and if he finds probable cause that improper conduct occurred and could have affected the outcome of the election, he shall set a hearing on the matter on a date falling within 2 weeks of when he received the charge. If he determines, after hearing, that the outcome of the election was affected by improper conduct, he shall order a new election. If he determines upon investigation or after hearing that the alleged improper conduct did not take place or that it did not affect the results of the election, he shall immediately certify the election results. Any labor organization that is the exclusive bargaining representative in an appropriate unit on the effective date of this amendatory Act shall continue as such until a new one is selected under this Section.” Ill. Rev. Stat. 1981, ch. 122, par. 3— 14.24. The following pertinent facts are disclosed in the record. Plaintiffs Linda Andracke and Patrick Luther were tenured teachers employed by the Board of Education of Minooka High School District No. Ill (hereinafter referred to as Board). On December 11, 1981, the teachers of the school district filed a petition with the regional superintendent of schools, pursuant to section 3 — 14.24, seeking a representation election to select a representative for the teachers of the district. The election was then scheduled for March 16, 1982. In January 1982, the superintendent requested that the teachers form a committee to discuss with the Board various issues, including salary and other terms and conditions of employment for the 1982-1983 school year. A similar “meet and confer” procedure between the Board and a teachers’ committee had been utilized in years past. Discussions between the Board and the committee continued through the weeks prior to the scheduled election and included the exchange of a series of proposals and counterproposals. On March 16, 1982, the election was held and the Minooka High School Education Association, a plaintiff herein, was elected as exclusive bargaining representative for the teachers. The same date as the election, the Board suspended all further negotiations. Thereafter, on March 31, 1982, without having conducted further negotiations or meetings, the Board sent a letter to each teacher in the district, setting forth two separate contract proposals. The letter offered each teacher the choice of being re-employed for the 1982-1983 school year at the same salary and on the same terms as 1981-1982, or being re-employed at a higher salary and different terms and conditions of employment, one of the changes being a no-strike clause in the contract. The letter clearly set forth the alternatives for each teacher: “You have the election of being employed for the 1982-1983 school year either on the basis of an extension of your 1981-1982 contract (Enclosure 1); or on the basis of the new employment contract (Enclosure 2).” Plaintiffs Andracke and Luther declined to sign either of the contract proposals. They informed the Board that they intended to return to work as teachers for the upcoming year. They maintained that since the Minooka High School Education Association (hereinafter MHSEA) had been selected as the exclusive bargaining agent for the teachers, that it was in violation of section 3 — 14.24 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 3 — 14.24) for the Board to negotiate with the individual teachers. Upon this refusal by them to sign a contract, they were paid under the provision of the prior contract. On June 21, 1982, plaintiffs Andracke, Luther and the MHSEA brought the instant suit against the Board, seeking declaratory and injunctive relief, as well as damages. MHSEA sought to have the court declare that it was the exclusive bargaining representative and to enjoin the Board from negotiating with the individual teachers. The teachers sought the same declaratory and injunctive relief, as well as damages in the amount of the difference in salary between the two contracts. The Board responded by motion to dismiss, with supporting affidavits and exhibits. The motion was granted. The trial court, in its dismissal order, found that section 3 — 14.24 was not intended as a comprehensive collective bargaining statute and that it did not require the Board to engage in bargaining. It further found that the provision does not forbid the Board from negotiating with individual teachers regarding employment contracts. The court also found that the letter by the Board submitting alternative contracts did not constitute negotiations. For these reasons, the court dismissed plaintiffs’ complaint for failure to state a cause of action. Notice of appeal followed. On appeal, the plaintiffs contend that section 3 — 14.24 imposed upon the Board an obligation to refrain from negotiating with individual teachers after certification of an exclusive bargaining representative, via the statutory election procedure. Reliance is placed upon the statutory language and upon a variety of cases. (Medo Photo Supply Corp. v. National Labor Relations Board (1944), 321 U.S. 678, 88 L. Ed. 1007, 64 S. Ct. 830; Morio v. North American Soccer League (S.D.N.Y. 1980), 501 F. Supp. 633; West Hartford Education Association v. DeCourcy (1972), 162 Conn. 566, 295 A.2d 526; Pennsylvania Labor Relations Board v. Eastern Lancaster County Education Association (1981), 58 Pa. Commw. 78, 427 A. 2d 305; Hetland v. Board of Education (1973), 295 Minn. 338, 207 N.W.2d 731.) As to the language of the statute, its plain meaning imposes no bargaining duties or obligations upon the Board. The statute is basically procedural. It sets forth the manner in which an exclusive bargaining representative may be elected by the teachers and certified by the regional superintendent. Nothing in the express language of the provision imposes affirmative or negative duties upon school boards, vis a vis the exclusive bargaining representatives. The provisions of the School Code setting forth Board duties were not amended in conjunction with the adoption of section 3 — 14.24 so as to impose any additional duties or obligations. (See Ill. Rev. Stat. 1981, ch. 122, par. 10 — 20 et seq.) It is to be noted that section 3 — 14.24 is part of the code delineating the duties of the regional superintendent of schools, not boards of education. The primary focus of the provision relates to his duty to oversee the certification of bargaining representatives. Plaintiffs emphasize the legislature’s use of the word “exclusive” in section 3 — 14.24, and from it, and it alone, find an intent to impose substantive duties upon school boards within the collective bargaining context. However, “exclusive” in the statutory provision modifies “bargaining representative.” We find the clear intendment of the provision to be to set forth a procedure for certifying the exclusive bargaining representative for the teachers. The meaning of “exclusive,” in this context, is that the Board may not bargain with any other agent or representative for the teachers, should the Board choose to bargain collectively. This prohibition relating to collective bargaining does not prevent the Board from bargaining on an individual basis, directly with the principals involved. There is nothing in the law of agency making it unlawful for a third party to deal with the principal after he has appointed an agent. We find the only intendment of the statute, as taken from its plain language, to be that the Board must not bargain collectively with any other agent or representative for the teachers, other than the representative certified by the regional superintendent. This provision does not prevent individual bargaining with the individual teachers, should the Board reject collective bargaining. Plaintiffs concede that the Board, under present law, had no duty to bargain collectively or individually. Plaintiffs, under the cases cited, argue that the statute created a negative duty to refrain from bargaining with anyone else but the exclusive bargaining representative. However, in the cases relied upon by plaintiffs, the courts were applying comprehensive collective bargaining statutes which expressly imposed collective bargaining duties and obligations upon employers. While Hlinois now has comparable statutory provisions,[1] a comprehensive bargaining provision cannot be read into section 3 — 14.24. The negative duty to refrain from individual bargaining, which is found in some of the cases, is an outgrowth of the affirmative duty to bargain collectively imposed by the comprehensive collective bargaining statutes. (Medo Photo Supply Corp. v. National Labor Relations Board (1944), 321 U.S. 678, 683-84, 88 L. Ed. 1007, 1011, 64 S. Ct. 830, 833.) As noted, Illinois has no comprehensive collective bargaining statute for public school teachers and employees, and there is no affirmative duty imposed upon school boards to bargain collectively. Thus, the basis for creation of a negative duty to refrain from bargaining individually is absent under Illinois statutes. Without such statutory basis, and we find no basis in section 3 — 14.24 for the imposition of the alleged duty, the duty does not exist. We find that the circuit court correctly dismissed plaintiffs’ complaint. We affirm. Affirmed. SCOTT, J., concurs. JUSTICE BARRY, specially concurring: I concur in the result reached by the majority. See 83 H.B. 1530, as amended by the Governor, establishing the Illinois Educational Labor Relations Act, effective January 1,1984.